## Mary E. Sharman v. James A. Sharman.

It seems that the power of the District Court, under the Act of 1837, (Vol. 2, Texas Laws, p. 95,) to decree divorces, was without limitation.

To what extent, if any, this power was modified by the introduction of the Common Law, in 1840, we need not examine. It was superseded, and in effect abrogated by the Act of January 6th, 1841, concerning divorce and alimony, though not expressly repealed until 1846.

This latter Act has always been understood, as defining and prescribing the cases in which divorce (where there has been a valid marriage) should be granted ; and it is conceived that the grant of jurisdiction, in the State constitution, " of all cases of divorce," does not enlarge the power given by the Statute.

The causes of divorce, under this last Statute, are adultery, intentional abandonment for three years, and such excesses, cruel treatment, or outrages of one towards the other, as would render their living together insupportable.

The fact that the husband has committed the crime of forgery, for which he has been convicted and sentenced to the penitentiary for seven years, where he is now confined, and that the wife is left without any means of support, except from her father, is not good cause for divorce under the Statute.

Appeal from Harris. Tried below before the Hon. Peter W. Gray.

The suit was commenced on the 17th of May, 1856, and the conviction and sentence of the defendant was alleged to have taken place on the 20th of December, 1854. The petition did not allege to whose injury the forgery was committed. It alleged that the plaintiff was left without any means of support, except from her father. The jury found that all the allegations of the petition, except those as to the previous marriage of the defendant to another woman, were true ; and the Court gave judgment for the defendant, notwithstanding the verdict. The other facts are stated in the Opinion.

*J. W. Henderson,* for appellant. We shall not contend that the conviction and confinement in the penitentiary, in all cases, is sufficient to entitle a party to a divorce against such person ; but we do most respectfully submit, if, where that conviction stamps the offender with an offence which forever blackens his character, as in this case, whether or not, to compel a lady of refined feelings and character to be tied down during a long life, to one whose character is blasted, and who has no standing with honorable men, and to compel her against all her finer feelings, to embrace one she cannot respect, love, honor or obey, is not within the spirit and meaning of our Statute, such ill treatment and outrage, as to render their living together as man and wife insupportable.

Again : The separation, in this case, for seven years, although not voluntary, the act producing the conviction and separation, was voluntary, and the party leaving the wife without means of support, is certainly such outrage and ill-treatment, within the meaning of the Statute, as will entitle her to a divorce. (Wright v. Wright, 6 Tex. R. 3 ; Nogees v. Nogees, 7 Id. 538.)

HEMPHILL, CH. J. This is a suit by the wife, for divorce, on the grounds that the husband was previously married to another woman, and that since his marriage with plaintiff, he has been convicted of the crime of forgery and sentenced to seven years hard labor in the penitentiary.

The charge of previous marriage was not sustained by the proof, and the only question is whether the conviction of a crime, and sentence to imprisonment and hard labor in the penitentiary is sufficient cause for divorce.

The District Courts have, from a very early period after the organization of the Republic of Texas, granted divorce from the bonds of matrimony. The power may have been, and probably was, exercised prior to 18th December, 1837 ; but on that day, it was expressly declared by the Congress of the Republic, that in addition to the powers given the District Courts, they should also have power to hear and determine all suits for divorce, or for separate maintenance, and might decree divorces as well from the bonds of matrimony as from bed and board, or for a separate maintenance. (Vol. 2, Texas Laws, p. 95.) It is not necessary, in this case, that we should attempt a definite construction of the extent of the powers granted under this Statute. The laws of Spain, so far as they were in harmony with our condition, were in force at that date : but it can hardly be imagined that the Legislature intended to grant only such power of divorce from the bonds of matrimony, as pertained under that code of jurisprudence, to the Ecclesiastical Courts, which Courts had the exclusive cognizance of matrimonial causes. The congress must be understood to mean divorce in its proper legal signification ; that is, a separation from the bonds of matrimony, for causes arising subsequent to the marriage. Now, in Spanish, or rather in the Canon Law as recognized in Spain, there were two causes of divorce *a vinculo*.

First—Where, of two infidels united in marriage, one is united to the Catholic faith, and the other attempts to molest,

and divert him or her from the faith, the convert may marry another person.

Second—Where a marriage has been contracted lawfully, but not consummated, if one of them should then enter into a convent, the other remains absolutely free to contract another marriage.

These grounds of divorce had no application under the changes effected by the revolution in Texas ; and the power to grant divorces, to have any effect at all, must have extended to causes, and operated on grounds not recognized by the former laws of the country. We may remark that there were many grounds, under the Spanish law, by which a marriage might be annulled ; but these were for causes and impediments existing prior to the marriage. But the question, under the Statute, is not as to the causes of nullity of marriage, but as to the grounds of divorce for causes arising subsequent to the marriage ; and we have seen that under that system, there were only two for which the marriage could be dissolved ; the other causes, such as adultery, cruelty, &c., authorizing only separation from bed and board. (*Vide* Escriche, under the words " Divorcio," " Matrimonio.")

The Congress did not, it is presumed, intend to confer a mere negative power under the Statute ; and possibly the power to grant divorces, without any express restrictions on its exercise, should be regarded as equivalent to the power in the Statutes in some of the States, by which a Court is authorized, in addition to its right to decree separation for prescribed causes, to also grant divorces in other cases, where it may be satisfied of the justice of the application, or considers it reasonable and proper that the application should be granted.

This, it is believed, was the construction, or, at all events, was nearly the practical effect and operation of the grant in the Act of 1837.

To what extent, if any, this power was modified by the introduction of the Common Law, in 1840, we need not exam-

Sharman v. Sharman.

ine. It was superseded, and in effect abrogated by the Act of January 6th, 1851, concerning divorce and alimony, though not expressly repealed until 1846.

This latter Act has always been understood as defining and prescribing the cases in which divorce should be granted ; and it is conceived that the grant of jurisdiction, in the State Con-stitution, over cases of divorce, does not enlarge the power given by the Statute. The causes of divorce, under this last Statute, are adultery, intentional abandonment for three years, and such excesses, cruel treatment and outrages of one towards the other, as would render their living together insupportable.

Does the act of the defendant, complained of in this case, come within any of these causes ? On behalf of the plaintiff, it is insisted that the crime committed by the defendant is of an infamous character, and an outrage and cruelty of such a nature as to come within the purview of the Statute and entitle her to a divorce. The most learned and accomplished Judges who have presided in the Ecclesiastical Courts in England have declined to give an affirmative definition of cruelty. Mr. Bishop, in his admirable treatise, has defined it to be any con-duct of the married parties, which furnishes reasonable appre-hension that the continuance of the cohabitation would be at-tended with bodily harm to the other. (Bishop Mar. and Div. p. 454.) If this be the correct definition of the term "cruelty," it is very clear that the act of defendant is not within the scope or purview of the term. The fact that the husband has committed forgery cannot, of itself, raise the most remote pre-sumption that he will inflict violence on his wife or do her any bodily harm ; and, admitting that there may, under our Statute, be such cruel treatment, without resort to personal violence, as would authorize divorce ; yet the acts must be a direct outrage upon her feelings, and such as are inconsistent with the matrimonial relation, its obligations, its duties or affections ; (6 Tex. R. 17 ;) as, for instance, an attempt by a husband to debauch women servants ; or charging the wife

with criminal connexion with others ; or incestuous connection with her uncle ; (cases cited in Wright v. Wright, 6 Tex. R. 3,) or conspiracy to introduce men into the wife's bedroom and bed, and then suddenly bringing witnesses to detect them in that position, so as to lay the foundation for divorce ; (1 Green ·Chanc. R. 459 ;) or to murder or cruelly ill treat the child or near relative of the wife.  These are cruelties of the most base and aggravated character ; and they are such, not because they or any of them are violative of the laws of the country, but because they are outrages to the feelings of the wife.

Several of the States have, by Statute, declared that con-viction and imprisonment for crime shall be sufficient cause for divorce.

Upon the policy of such provision, I shall make no comment. It is the province of the Legislature to determine, in its wis-dom, its expediency or justice.  But until it is adopted by Statute, it cannot claim support under any of the grounds of divorce, as now specified and allowed ; and we are therefore of opinion that there is no error in the judgment, and that it be affirmed.

Judgment affirmed.